**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**JESSICA WARTERS,**

                **Plaintiff,**                3:10-cv-850
                                                              (GLS/DEP)

          v.

**JOHN LAURA et al.,**

                **Defendants.**
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| **FOR THE PLAINTIFF:** | |
| d'Arcambal Ousley & Cuyler Burk, LLP<br>40 Fulton - Suite 1005<br>New York, NY 10038 | JACLYN DILASCIO MALYK, ESQ.<br>STEPHEN D. CUYLER, ESQ. |
| **FOR THE DEFENDANTS:** | |
| HON. ERIC T. SCHNEIDERMAN<br>New York State Attorney General<br>Office of Attorney General<br>The Capitol<br>Albany, NY 12224 | ADELE M. TAYLOR-SCOTT<br>MICHAEL C. McCARTIN<br>Assistant Attorneys General |

**Gary L. Sharpe
Chief Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiff Jessica Warters commenced this action against defendants[1]

___

[1] John Laura, Jennifer Marshall, B. Jean Fairbairn, Sunha Choi, Laura R. Bronstein, Brian Flynn, Diane Weiner, Josephine Allen, Patricia

pursuant to 42 U.S.C. § 1983 for relief related to her dismissal from a graduate degree program at the State University of New York at Binghamton ("the University"). (*See* Dkt. No. 1, Compl.) Pending is Warters' motion for partial summary judgment on the issue of liability, (*see* Dkt. No. 46), and defendants' cross motion for summary judgment dismissing the Complaint, (*see* Dkt. No. 47). For the reasons that follow, Warters' motion is denied and defendants' cross motion is granted.

## II. **Background**

### A. **Facts**[2]

Warters enrolled at the University in 2007 in pursuit of a Masters of Social Work (MSW) degree in the Department of Social Work (DSW) of the College of Community and Public Affairs (CCPA). (*See* Pl.'s Statement of Material Facts (SMF) ¶¶ 1, 5, Dkt. No. 46, Attach. 2.) To obtain a MSW degree, students in the program were required to complete two segments of field study, which was graded on a satisfactory/unsatisfactory—in

---

Wallace Ingraham, Sharon L. Holmes, Dennis Chapman, Pamela Mischen, Tamara Behonick, Marilyn Tallerico, Robert Guay, Mark Fowler, Dara Silberstein, Cassandra Bransford, John Does 1-10, and John Roes 1-10. (*See* Dkt. No. 1, Compl.)

[2] Unless otherwise noted, the facts are undisputed.

essence, pass/fail—basis. (*See id.* ¶¶ 6-7.) These courses, known as Field Instruction I (SW 591) and Field Instruction II (SW 592), could collectively be completed over either thirty-two or fifty weeks. (*See id.* ¶¶ 6, 16, 18; Dkt. No. 46, Attach. 3 at 38-46.) During the 2007 fall semester, Warters began Field Instruction under the thirty-two week plan, which would span the fall and spring semesters and require fifteen hours per week at her assigned placement with Broome Developmental Center (BDC). (*See* Pl.'s SMF ¶¶ 4, 5, 16, 19.) The placement with BDC was arranged and approved by defendant Jennifer Marshall, Director of Field Education at the DSW. (*See id.* ¶¶ 19, 22.) Defendant John Laura, an employee of BDC, was Warters' field instructor for the internship. (*See id.* ¶¶ 21.)

Just prior to the start of Field Instruction I, scheduled to begin the first week of September 2007, Warters was involved in an automobile accident, which resulted in "serious neck and back" injuries, and vision deficits. (*See id.* ¶¶ 24-25.) Warters presented at BDC for the first time on September 10, 2007 and stayed for about an hour. (*See id.* ¶¶ 25, 28.) Two days later, Marshall appointed herself as Warters' field liason, a position filled by "faculty and staff from the Division of Social Work whose role is as a

contact for students and field instructors during the student's field instruction." (Dkt. No. 46, Attach. 3 at 19; *see* Pl.'s SMF ¶¶ 14, 29.) After having difficulty meeting the weekly hour requirement for the thirty-two-week-long Field Instruction, Warters reduced her hours to ten per week with the approval of Marshall and Laura. (*See* Pl.'s SMF ¶¶ 32-33.)

Laura completed a mid-term evaluation in November and graded Warters as "'Satisfactory[,]' the highest mark for Overall Impression." (*Id.* ¶¶ 36-39.) In January 2008, Warters switched to the fifty-week version of Field Instruction "due to her continuing back pain." (*Id.* ¶ 40.) Warters alerted Marshall in February that she was having physical difficulties with her internship, and, in March or April, she explained that she was concerned about a lack of supervision by Laura, his conduct at meetings held in public places, and the advanced skills required for the placement. (*See id.* ¶¶ 41-42, 44-45.) In March, Warters was put on notice that her performance in Field Instruction was not satisfactory; in fact, Marshall suggested a medical leave of absence, which Warters declined to pursue. (*See* Defs.' SMF ¶¶ 25-26, Dkt. No. 47, Attach. 1.) Laura thereafter completed another mid-term evaluation of Warters' performance in Field Instruction, this time scoring her as needing improvement as an overall

4

impression. (*See* Pl.'s SMF ¶¶ 52-53.)

The working relationship between Warters and Laura apparently began to deteriorate afterward. In June 2008, Warters requested a meeting with Marshall to discuss the possibility of Laura no longer being able to serve as her field instructor because of "issues" he was having at BDC. (*Id.* ¶¶ 58-59.) On July 1, 2008, Laura told Warters not to return to BDC and recommended a failing grade. (*See id.* ¶¶ 68.)[3] Two weeks later, Marshall informed Warters that she failed Field Instruction and would be terminated from the MSW degree program. (*See id.* ¶¶ 75-77.)

Warters then began a series of administrative appeals regarding the failing grade she received. (*See generally id.* ¶¶ 78, 80, 90, 104.) After three unsuccessful attempts by Warters at challenging her failing grade—first, directly to Marshall; second, to the Ad Hoc Hearing Committee; and, third, to the CCPA Grievance Committee—Associate Dean of the Graduate School defendant Dara Silberstein found, against the recommendation of a specially-conveved committee after a formal hearing,

---

[3] Defendant Brian Flynn, a professor in the DSW, acted as Warters' field liason for the summer term. (*See* Pl.'s SMF ¶ 60.) Flynn directed Warters not to return to BDC after he learned of Laura's decision. (*See id.* ¶ 69.)

5

that Warters grade should be changed to "Incomplete" and she be afforded an "opportunity to complete the SW 592 course requirement." (Dkt. No. 46, Attach. 3 at 95-97; *see* Pl.'s SMF ¶¶ 79, 87, 101, 104-105, 113, 118, 119.) Silberstein's decision, which was issued in late December 2008, was based upon "procedural problems," namely, the DSW's failure to use the "Advancement Process and Procedure" set out in its own policy, and other "irregularities with respect to previous hearings particularly with respect to the CCPA Ethics and Integrity Committee." (Dkt. No. 46, Attach. 3 at 95-97; *see* Pl.'s SMF ¶¶ 120-126.) Ultimately, Silberstein concluded that Warters "was denied due process." (Pl.'s SMF ¶ 132.) Although Marshall attempted to appeal Silberstein's decision, her appeal was rejected as untimely. (*See* Defs.' SMF ¶ 76.)

Silberstein's ruling had the effect of changing Warters' grade in Field Instruction II (SW 592) to an "Incomplete" and providing her with an opportunity to "re-take or complete the course in the Spring 2009 semester." (*Id.* ¶ 77.) In February 2009, Marshall formally notified Warters of certain shortcomings in her performance, and she also identified steps Warters could take to be more successful. (*See id.* ¶¶ 84-85.) The following month, an Advancement Committee met and further advised

6

Warters that her advancement in the MSW degree program depended on better communication on her part. (*See id.* ¶¶ 86-87.) Although several draft versions of a formal Advancement Plan pertaining to Warters had been previously circulated for changes and approval, the final draft was not approved by Warters until March 31, 2009. (*See* Pl.'s Supplemental SMF ¶¶ 51-52, Dkt. No. 50, Attach. 2.)

Marshall eventually arranged an interview for Warters, on March 25, 2009, with a new potential Field Instruction placement. (*See id.* ¶ 37.) Warters arrived late for the interview, failed to contact Marshall afterward as specifically requested by Marshall, and failed thereafter to attend mandatory orientation sessions for the new placement. (*See* Defs.' SMF ¶¶ 92, 93, 95; Dkt. No. 47, Attach. 12 ¶ 7.) On April 2, 2009, based upon Warters' failures to correct "issues that had repeatedly been brought to [her] attention," defendant Laura R. Bronstein, Director of the DSW, determined that Warters should be given a failing grade for the course she was permitted to retake by Silberstein's decision, and, further, that she would again be dropped from the degree program. (*See* Defs.' SMF ¶¶ 96-99.) Warters did not appeal Bronstein's decision; however, she sought and was granted a medical withdrawal retroactive to April 1, 2009. (*See id.*

7

¶¶ 100-01; Pl.'s Supplemental SMF ¶ 59.) At some point, Warters applied to a similar degree program at the University at Albany, the State University of New York, but her application was rejected. (*See* Pl.'s Supplemental SMF ¶ 57.)[4]

B. **Procedural History**

Warters commenced this action in July 2010, and alleged claims pursuant to 42 U.S.C. § 1983, Title II of the Americans with Disabilities Act (ADA),[5] and section 504 of the Rehabilitation Act.[6] (*See* Compl. ¶¶ 150-73.) Following joinder of issue and discovery, the parties stipulated to the dismissal of Warters' ADA and Rehabilitation Act claims, leaving only her first claim, which asserts that defendants deprived her of "due process of law." (Compl. ¶¶ 151, 170-73; *see* Dkt Nos. 33, 45.)[7] After the parties filed

---

[4] In light of the transcript issued on February 10, 2009 to "SUNY Center Albany," it appears that Warters applied to the University at Albany prior to receiving a failing grade and being dismissed from the program for the second time. (*See* Dkt. No. 50, Attach. 2 at 71.)

[5] *See* 42 U.S.C. §§ 12131-12165.

[6] *See* 29 U.S.C. § 794.

[7] Although Warters claims that she is entitled to relief under 42 U.S.C. § 1988 and punitive damages, (*see* Compl. ¶¶ 170-73), those "claims" are dependent on and subordinate to the only remaining claim of any independent substance. *See Panetta v. Vill. of Mamaroneck*, No.11 CV 4027, 2012 WL 5992168, at *7 (S.D.N.Y. Feb. 28, 2012) (explaining

8

the instant motions, the action, which had been pending before Senior United States District Judge Thomas J. McAvoy, was reassigned to this court. (*See* Dkt. No. 59.)

### III. Standard of Review

The standard of review pursuant to Fed. R. Civ. P. 56 is well established and will not be repeated here. For a full discussion of the standard, the court refers the parties to its decision in *Wagner v. Swarts*, 827 F. Supp. 2d 85, 92 (N.D.N.Y. 2011).

### IV. Discussion

In support of her motion, Warters makes two principal arguments. First, she contends that "[s]ummary [j]udgment is appropriate because [defendants] cannot overcome the burden of proof required to overturn an administrative agency decision." (Dkt. No. 46, Attach. 1 at 14-19.) Particularly, Warters alleges that Silberstein's decision, which is based upon specialized expertise, is entitled to a "high degree of deference" that can only be overturned if arbitrary and capricious, irrational, made in bad faith or contrary to the Constitution or statute. (*Id.* at 14-15.) Warters also

---

that claims for punitive damages and attorney's fees under section 1988 "should not be . . . separately-delineated cause[s] of action").

9

takes issue with defendants "refus[al] to implement Silberstein's decision," asserting that she was never given a meaningful opportunity to complete Field Instruction II (SW 592). (*Id.* at 18.) Second, Warters claims that Silberstein's decision went unchallenged by defendants, resulting in a failure to exhaust their administrative remedies, and is entitled to preclusive effect. (*See id.* at 19-21.)

As to their cross motion, defendants first argue that Warters was "granted substantial procedural due process." (Dkt. No. 47, Attach. 33 at 13-18.) Specifically, defendants maintain, that, among other things, Silberstein's decision cured any error occurring prior to the appeal. (*See id.* at 16.) According to defendants, Warters failed to avail herself of available remedies with respect to any post-appeal wrongdoing by defendants. (*See id.* at 11, 18.) Next, defendants contend that Warters cannot make out a plausible substantitve due process claim because the failing grades she was given and her dismissal from the MSW degree program were justified by her poor performance in Field Instruction. (*See id.* at 18-22.) Defendants also claim that Warters' due process claims are moot because of the medical withdrawal granted to her that effectively nullified the failing grade issued by Marshall in April 2009, and that they are

entitled to qualified immunity. (*See id.* at 22-23.)

In response to defendants' arguments, Warters asserts, among other things, that: (1) defendants wrongly and intentionally failed to implement Silberstein's favorable decision, which serves as evidence of both procedural and substantive due process violations; (2) she was not required to exhaust her administrative remedies regarding the post-appeal conduct of defendants, and, in any event, to do so "would clearly have been futile"; and (3) the action is not moot in light of the medical withdrawal retroactive to April 1, 2009 because she has lost her scholarship, significant time, and money as a result of defendants' conduct even if she is able seek readmission to the MSW degree program. (Dkt. No. 50 at 5-18; *see* Dkt. No. 53 at 1-5.)

### A.     Mootness

As a threshold issue, the court must consider whether this case has been rendered moot by the medical withdrawal, which was issued after Warters received the second failing grade, but was also retroactive to before that time. (*See* Dkt. No. 47, Attach. 33 at 22-23.) The burden on a party asserting mootness is a "heavy" one. *Lillbask ex rel. Mauclaire v. Conn. Dep't of Ed.*, 397 F.3d 77, 84 (2d Cir. 2005). The fundamental

question is whether the dispute is "real and live."  *Id.*  Here, defendants have failed to meet their hefty burden.  While the retroactive medical withdrawal may have excused some conduct that forms the basis of Warters' claims, Warters' transcript apparently continues to reflect a failing grade despite the issuance of the medical withdrawal.  (*See* Pl.'s Supplemental SMF ¶ 58; Dkt. No. 47, Attach. 24 ¶ 53; Dkt. No. 50, Attach. 2 at 71.[8])  Moreover, even though Warters can now apparently seek readmission to the MSW degree program provided that she is "medically cleared to return," (*see* Dkt. No. 47, Attach. 24 ¶ 52), her academic career has been derailed by a significant passage of time dealing with the underlying events.  As such, the court is satisfied that a live controversy remains.

## B.     Due Process

Warters' remaining claim boils down to an allegation that defendants denied her due process as a result of their interference with her "right to obtain a graduate degree."  (*See* Compl. ¶¶ 150-155.)  As further explained

---

[8] The court notes that the copy of Warters' transcript contained within the record was issued nearly two months prior to the time she was informed of the medical withdrawal.  (*Compare* Dkt. No. 47, Attach. 5 at 74, *with* Dkt. No. 50, Attach. 2 at 71.)

12

in her brief, Warters claims that the process leading up to each of the failing grades she was given was flawed, and defendants' intentional and arbitrary failure to implement Silberstein's decision violated her due process rights. (*See* Dkt. No. 50 at 1-13, 17-18.)

The Due Process Clause of the Fourteenth Amendment contains both substantive and procedural components, which may give rise to a claim provided that the plaintiff can demonstrate the deprivation of a protected property or liberty interest. *See Johnson v. N.Y.C. Police Dep't*, 25 F. App'x 32, 33 (2d Cir. 2001). New York state law recognizes an implied contract requiring academic institutions to deal with their students in good faith. *See Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991). "Such an implied contract, recognized under state law, provides the basis for a property interest that would be entitled to constitutional protection." *Id.* Indeed, defendants concede that, at least in this Circuit, Warters has a protected property interest. (*See* Dkt. No. 47, Attach. 33 at 13 n.2.)

Although exhaustion of administrative remedies is generally not a prerequisite to the commencement of a section 1983 action, such as this one, *see Patsy v. Bd. of Regents of Fla.*, 457 U.S. 496, 516 (1982), "the existence of state remedies is relevant" to procedural due process claims,

13

*Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (emphasis omitted). On the other hand, substantive due process violations are actionable as soon as the wrongful conduct occurs, and, thus, the availability of some post-conduct remedy is irrelevant. *See id.*

　　1.　　*Procedural Due Process*

At its core, procedural due process requires notice and an opportunity to be heard. *See Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). Because this variety of due process is concerned with the process itself, there is no violation unless the state either provides no process whatsoever or provides a constitutionally inadequate one. *See Zinermon*, 494 U.S. at 126. Procedural protections are necessarily flexible; however, "formal hearings before decisionmaking bodies need not be held in the case of academic dismissals." *Bd. of Curators of the Univ. of Mo. v. Horowitz*, 435 U.S. 78, 88 (1978). Importantly, administrative redress is part of the due process protection a plaintiff receives, and, if a favorable result is achieved in challenging the denial of process on an administrative level, it can cure any procedural defects that may have occurred. *See Young v. Hoffman*, 970 F.2d 1154, 1156 (2d Cir. 1992).

14

Here, while the court is skeptical that Warters' right to procedural due process was violated prior to her successful appeal, *see generally Horowitz*, 435 U.S. at 85-86, any wrongdoing by defendants was assuaged by Silberstein's decision to award Warters an "Incomplete" and permit her to retake Field Instruction II, (Dkt. No. 46, Attach. 3 at 95); *see Young*, 970 F.2d at 1156 ("The administrative reversal constituted part of the due process protection he received, and it cured any procedural defect that may have occurred."). As for defendants' post-appeal conduct, which includes the implementation of Silberstein's decision as discussed more fully below, the second failing grade, and decision to dismiss Warters from the program, no violation occurred because the process available to Warters—namely, the appeal process that she previously used successfully—was constitutionally adequate. *See Rivera-Powell v. N.Y.C. Bd. of Elections*, 470 F.3d 458, 468 n.12 (2d Cir. 2006). The court notes that Warters' argument regarding the futility of the appeals process, (*see* Dkt. No. 50 at 14-15), is inapposite because the measure of procedural due process is the "process the State provided, and whether it was constitutionally adequate," *Zinermon*, 494 U.S. at 126. As Warters aptly notes, (*see* Dkt. No. 50 at 14), exhaustion, and its corresponding

15

exceptions, is not a prerequisite to recovery under section 1983. *See Patsy*, 457 U.S. at 516.[9] Accordingly, defendants are entitled to summary judgment as to procedural due process.

2. *Substantive Due Process*

The threshold question in considering an alleged violation of substantive due process, "'is whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *Graziano v. Pataki*, 689 F.3d 110, 119 (2d Cir. 2012) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998)). The success of such a claim relies upon a showing "that the defendants infringed [the plaintiff's] property interest in an arbitrary or irrational manner." *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 503 (2d Cir. 2001).

---

[9] The court notes that Silberstein's finding that Warters was "denied the . . . due process protections as the School itself . . . set forth," is not entitled to any preclusive effect, and, accordingly, does not establish that Warters' is entitled to summary judgment as to liability. (Dkt. No. 46, Attach. 3 at 97.) Silberstein's determination does not amount to a determination that constitutional due process was violated, for the minimum procedural requirements owed to a plaintiff are a matter of federal law, not state specification. *See Cleveland Bd. of Ed. v. Loudermill*, 470 U.S. 532, 541 (1985). For this simple reason, Warters' motion must be denied.

In the context of academic decisions, such as those in this case, made by public educational institutions, "[c]ourts are particularly ill-equipped to evaluate academic performance." *Horowitz*, 435 U.S. at 91-92. Thus, academic decision-making should not be intruded upon by the courts "unless [there] is such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment." *Regents of the Univ. of Mich. v. Ewing*, 474 U.S. 214, 225 (1985). Further, "educational institutions have the right to receive summary judgment unless there is evidence from which a jury could conclude that there was no rational basis for the decision or that it was motivated by bad faith or ill will unrelated to academic performance." *Clements v. Nassau Cnty.*, 835 F.2d 1000, 1004 (2d Cir. 1987).

Initially, the court highlights that Warters makes no claim that substantive due process was violated prior to her successful administrative appeal. (*See* Dkt. No. 50 at 13, 17-18.) Instead, she contends that the intentional failure of defendants to implement Silberstein's decision violates her substantive due process rights. (*See id.* at 17-18.) However, as a factual matter, Silbertein's decision was fully implemented. That decision

17

only required that "Warters' grade . . . be changed to an 'Incomplete' allowing her an opportunity to complete the [Field Instruction II] SW 592 course requirement." (Dkt. No. 46, Attach. 3 at 95.) Marshall assisted Warters in that regard, and commenced the Advancement Process, which was identified by Silbestein as the only error occurring outside of the appeals process and the primary basis of her decision. (*See id.* at 96-97; Defs.' SMF ¶¶ 86-88, 90.)

In any event, summary judgment for defendants is appropriate because there is no evidence that treatment of Warters was without a rational basis or "motivated by bad faith or ill will unrelated to academic performance." *Clements*, 835 F.2d at 1004. Despite the fact that the Advancement Plan was only in place for two days before Warters was given her second failing grade and dismissed from the program, (*compare* Defs.' SMF ¶ 99, *with* Pl.'s Supplemental SMF ¶ 52), those decisions are supported by Warters' continual inability to meet the expectations of the DSW.

For example, dating back to her interaction with Laura, Warters' participation and completion of assignments was "[b]elow expectation." (Dkt. No. 47, Attach. 23 at 17.) By March 2008, Laura found Warters'

18

performance in the internship to be unsatisfactory. (*See* Defs.' SMF ¶ 25.) After her successful appeal, Warters continued to fall below the DSW's expectations. As summarized in Bronstein's letter to Warters advising her that she would be given a failing grade for a second time, Warters failed to: (1) "get back to [Marshall] (as instructed) after the interview with the potential field instructor to move the placement process forward"; (2) "return necessary paperwork to the agency in a timely fashion"; (3) "communicate with [her] field instructor regarding plans for a start date"; and (4) "attend two agency orientation meetings required for [her] to begin [her] field placement with the agency." (Dkt. No. 47, Attach. 5 at 72.) Warters admitts each of those accusations to some degree. (*See* Defs.' SMF ¶¶ 93-95.) Warters' shortcomings in performance and professionalism provide an entirely non-arbitrary and rational basis for defendants' conduct and Bronstein's letter leaves no doubt that the academic decision made here was the result of professional judgment. As such, defendants are entitled to judgment regarding Warters' claim that her substantive due process rights were violated.

## V. <u>Conclusion</u>

**WHEREFORE**, for the foregoing reasons, it is hereby

19

**ORDERED** that Warters' motion for partial summary judgment (Dkt. No. 46) is **DENIED**; and it is further

**ORDERED** that defendants' cross motion for summary judgment (Dkt. No. 47) is **GRANTED** and Warters' Complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

January 29, 2013
Albany, New York

_Gary L. Sharpe_
Gary L. Sharpe
Chief Judge
U.S. District Court